**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------------x
CAROLINE BOND,

                         Plaintiff,         Case No:  1:25-cv-10073

          v.

WOUNDED WARRIOR PROJECT,

                        Defendant.
------------------------------------------------------------------------x

Plaintiff CAROLINE BOND, by and through her attorneys, the BELL LAW GROUP PLLC, respectfully alleges, upon knowledge as to herself and her own actions, and upon information and belief as to all other matters, as follows:

## NATURE OF THE ACTION

1.     This claim is for violations of the Americans with Disabilities Act ("ADA") and the New York State Human Rights Law ("NYSHRL"), and the New York City Human Rights Law ("NYCHRL") following Defendant's failure to provide reasonable accommodations for Plaintiff's disabilities, failure to engage in the interactive process, retaliation for protected activity in requesting reasonable accommodations, failure to promote, and constructive discharge.

## PARTIES

2.     During all relevant times herein, Plaintiff was a resident of Suffolk County, New York.

3.     Plaintiff is an employee within the meaning of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 et seq.

4.     Plaintiff is an employee within the meaning of the New York State Human Rights Law ("NYSHRL"), NY CLS Exec. §§ 290 *et seq.*

5.     Plaintiff is an employee within the meaning of the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code 8-101, *et seq.*

6.     Defendant Wounded Warrior Project ("WWP" or "the Company") is a foreign not-for-profit corporation authorized to conduct business in the State of New York pursuant to § 1304 of the Not-For-Profit Corporation Law.

7.     Defendant WWP's New York office is located at 370 7th Avenue, Suite 1802 New York, New York 10001.

8.     Defendant WWP is a covered employer within the meaning of the ADA and at all relevant times employed more than fifteen (15) people.

9.     Defendant WWP is a covered employer within the NYSHRL, NY CLS Exec. §§ 290 *et seq.*

10.     Defendant WWP is a covered employer within the NYCHRL, N.Y.C. Admin. Code 8-101, *et seq.*.

11.     Defendant James Herrera at all relevant times was employed at Defendant WWP and was Plaintiff's "employer" as he had authority over the terms, conditions, or privileges of her employment, as well as the authority to hire, fire, and discipline her and other employees.

## JURISDICTION AND VENUE

12.     This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367 because those claims are so related to the federal claims that they for a part of the same case or controversy between Plaintiff and Defendant.

13.     Venue is proper in this case pursuant to 28 U.S.C. § 1391 because (1) the Defendants are located in New York County, New York which is located in the Southern District

of New York, and (2) the events which give rise to Plaintiff's claims took place in New York County, which is located in the Southern District of New York.

14.    This Court has specific jurisdiction over Defendant Herrera. Although he is a resident of the state of Colorado, Defendant Herrera has sufficiently transacted business with the state of New York to invoke New York's long-arm statute, as he was directly involved in supervising Plaintiff's employment in New York, interacted with Defendant WWP's New York office and New York employees, disciplined Plaintiff, made decisions regarding her reasonable accommodation request, and made the determination not to interview Plaintiff for the Director position described herein. Because Plaintiff's suit arises out of or relates to Defendant Herrera's contacts with the State of New York, the court has specific jurisdiction over Defendant Herrera pursuant to CPLR § 302(a)(1).

15.    All conditions precedent to filing suit have been fulfilled. On or about December 28, 2024, Plaintiff filed a timely Charge of Discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") bearing EEOC Charge No. 520-2025-01859. On September 15, 2025, the EEOC issued Plaintiff a Notice of Right to Sue. Annexed hereto, and hereby incorporated into this Complaint as "Exhibit A" is a copy of Plaintiff's Charge of Discrimination and Notice of Right to Sue.

## FACTUAL ALLEGATIONS

### Factual Background

16.    Plaintiff was hired by Defendant in November 2021 as an Adaptive Sports Specialist for the East region in the Company's New York office.

17.    Plaintiff is a disabled individual who utilizes a hearing aid and a cochlear implant to assist the severe-to-profound hearing loss that she has had since birth.

18.     Plaintiff's hearing loss is a physical impairment that substantially limits one or more major life activities, including, *inter alia,* hearing.

19.     From the start of her employment, Defendant has failed to regularly provide accessibility features for individuals with disabilities, such as transcriptions, captions, or subtitles for meetings, conferences, and training videos.

20.     In December 2021, Plaintiff met with Defendant's leadership to discuss these accessibility gaps and she provided extensive research including price quotes for potential solutions.

21.     Defendant never followed up with Plaintiff following this discussion, and it was not until 2023 that Defendant began to occasionally implement basic accessibility features like live captions and recorded meetings. However, in order to implement live captions, Defendant WWP isolated Plaintiff away from her colleagues at a table alone with the captionist. Still today, the majority of Defendant's mandatory training content and software platforms remain out of compliance with the ADA and the Web Content Accessibility Guidelines ("WACG").

**Plaintiff's Injury and Requests for Accommodations**

22.     In March , 2022, Plaintiff suffered a bad fall outside of work that resulted in a severe concussion and required seven (7) weeks of Short-Term Disability Leave to recover.

23.     As a result of the fall, Plaintiff suffered from Post-Concussive Syndrome, which caused profound symptoms such as severe screen-induced vertigo, headaches and neck pain, and sensitivity to light and sound, with brain fog, disorientation, dizziness, and word-finding trouble. These symptoms were associated with and worsened with extended screentime.

24.     As a result, Plaintiff's neurologist Dr. Alyssa Rehm prescribed her medication which allows her to perform the necessary functions of her job in an effective way. However, Dr.

Rehm advised that Plaintiff should avoid operating a vehicle or commuting to the office on the days she uses this medication to alleviate the symptoms associated with extended computer use.

25.     Beginning in or around October 2022, Plaintiff requested a reasonable accommodation to the company's hybrid office policy. Specifically, Plaintiff requested to work from home on days when she is not facilitating an in-person event. Such accommodation posed no hardship to Defendant as there was only a small employee presence at the New York Office, and Plaintiff's team members all worked out of a different state.

**Defendant's Discrimination, Harassment, and Retaliation Campaign**

26.     Since Plaintiff requested this reasonable accommodation, she has been subject to a campaign of harassment, discrimination, and retaliation from Defendant. In fact, Defendant's first reaction to her request was to call Plaintiff "a liability."

27.     On October 18, 2022, a Human Resources representative for Defendant WWP, Ms. Marla Murnahan, communicated to Plaintiff that she could continue to work from home, but starting December 5, 2022, she would be expected to come into the office two days per week.

28.     Despite her correspondence on October 18, 2022, Ms. Murnahan advised Plaintiff that her request for accommodation was "reevaluated" and that she would need to be present in the office three days per week starting December 1, 2022.

29.     Plaintiff's manager Marc Hoffmeister sought clarification on this conflicting guidance by was advised by Ms. Murnahan that "it has been determined at this point, she has worked at least 6 months remotely, and should return to the Hybrid Policy in December. This is consistent with past practice and policy."

30.     Upon information and belief, there is no such policy, and Ms. Murnahan did not cite to any. On the contrary, Defendant's Teammate Handbook instructs employees to "follow prescribed care from your healthcare provider when treated for any illness or injury."

31.     Plaintiff sought guidance from her manager Mr. Hoffmeister, who worked out of Defendant's Colorado Springs office, and worked with Plaintiff closely every day and was in the best position to determine whether her working from home posed any hardship to Defendant. Mr. Hoffmeister fully supported Plaintiff's need to work remotely and found that her productivity enhanced when she did so.

32.     Plaintiff then consulted Emily Gray, Communications Director and NYC Office Lead who had been at Defendant WWP for eleven (11) years, six (6) of which at the leadership level. When Plaintiff advised Ms. Gray of the situation, Ms. Gray encouraged Plaintiff to continue to work remotely until her situation improved. Ms. Gray explicitly communicated to Plaintiff that Defendant's Human Resources gave her the authority to make decisions about whether employees should be in the office.

33.     In March 2023, Plaintiff had a follow-up appointment with Dr. Rehm as her symptoms worsened. Dr. Rehm again stated that it was medically necessary for Plaintiff to work remotely on days she took her prescribed medication. Dr. Rehm wrote a letter to Defendant WWP stating this medical necessity and stated that approval of Plaintiff's request for accommodation "will reduce prolonged disability."

34.     Following this appointment with Dr. Rehm, Plaintiff reached out to Defendant WWP's HR Specialist Alissa Wood to ask how to submit her additional documentation from Dr. Rehm, to which Ms. Wood responded that she would need to submit a second formal

accommodations request. Plaintiff then began compiling the necessary materials for this second request for the same accommodations she sought six months earlier.

35.     Throughout this time, Defendant WWP launched a discriminatory and retaliatory disciplinary campaign against Plaintiff for her alleged failure to comply with the Hybrid Policy. On April 27, 2023, Defendant WWP Vice President Mr. James Herrera contacted Mr. Hoffmeister concerning Plaintiff's in-office presence since the start of 2023. Mr. Hoffmeister responded that "she's managing it but her doctor recommended otherwise" and that "She's been fully engaged and responsive to all program needs." Mr. Hoffmeister explained that both he and Ms. Gray supported Plaintiff's medical need to work remotely, and that he took responsibility for Plaintiff's alleged non-compliance with the Hybrid Policy and that he did not think Plaintiff's non-compliance warranted counseling or degradation of her current performance evaluation."

36.     In response, Defendant Herrara stated that they were "going to need to document this one via HR counseling. She's playing the system … it should also be noted in her eval."

37.     Defendant Herrera then directed Mr. Hoffmeister to issue a written verbal warning. Mr. Hoffmeister complied with this directive and sent his drafted written verbal warning to Mr. Herrera for approval. Defendant Herrera instructed Mr. Hoffmeister to make the warning harsher, and to include the consequence of "up to and including termination." Defendant Herrera was aware of Plaintiff's medical necessity to work remotely and nonetheless decided to issue a formal disciplinary warning, even over the objection of Plaintiff's supervisor.

### Plaintiff's Second Accommodations Request, Discrimination Continues

38.     On May 4, 2023, Plaintiff met with Ms. Wood to discuss her second accommodations request, and on May 12, 2023, Plaintiff submitted all the required documentation for this request.

39.     In May 2023, after six (6) months of waiting for an answer to her request for a reasonable accommodation, Plaintiff received the written warning accusing her of violating the Hybrid office policy during her mid-year review. This written warning included a threat of termination.

40.     During this time, Defendants swiftly approved the request of Plaintiff's West Coast counterpart, Adaptive Sports Specialist for the West region, to work remotely following their relocation. This individual is similarly situated to Plaintiff but outside of her protected classes.

41.     Defendants continued to demand Plaintiff provide unnecessary personal health information from her physician before even considering her request.

42.     During this time, Defendants banned Plaintiff from all work-related travel, local or nationally, including cancelling planned attendance to scheduled internal training events and internal development programs, until her physician responded to their unreasonable demands. With work-related travel central to her position, Defendants prevented Plaintiff from effectively performing her job responsibilities during that time.

43.     In August 2023, Defendant WWP temporarily approved Plaintiff's request for reasonable accommodation, to work from home on the days she is not facilitating an in-person event, under the condition that Plaintiff's physician provide additional documentation.

44.     Following this conditional approval, Plaintiff had hoped the campaign of harassment and retaliation against her would end so she could resume her successful work and dedication to the Wounded Warrior Project. Unfortunately, the intolerable treatment and retaliatory behavior continued.

**Plaintiff's Discriminatory Non-Selection**

45.     In February 2024, Plaintiff expressed interest in a Director position advertised to internal candidates at Defendant WWP. Several program clients, vendor partners, and colleagues wrote positive recommendations on Plaintiff's behalf.

46.     After two (2) years of success in her role with Defendant WWP, Plaintiff was more than qualified for the Director position. Plaintiff received high-scoring performance evaluations, glowing vendor and colleague recommendations, and had customer scores averaging between 97% and 100%.

47.     Defendants declined to offer Plaintiff a courtesy interview, even though its Company policy is to extend such an interview to internal candidates with relevant experience.

48.     When Plaintiff asked for constructive feedback on why she was not afforded an interview for the role, Defendant Herrera responded "this is not a debate. I have no confidence in you."

49.     Defendants also denied receiving any positive recommendations on Plaintiff's behalf, incorrectly told Plaintiff that the Director role required military service experience when it did not, and told Plaintiff that the program was not growing, despite other publicly listed job advertisements for roles within the program.

50.     Also in February 2024, in effort to finalize the protracted accommodations process, Plaintiff provided an amended list of personal health information and Plaintiff's physician provided Defendants with a detailed letter in full support of the accommodations Plaintiff sought.

51.     Soon after, in March 2024, Defendants officially denied Plaintiff's request for reasonable accommodation, thereby revoking the conditional approval she had received months

prior. In its denial letter sent via email, Defendant mandated that Plaintiff comply with the Hybrid policy and made no offer to explore alternative accommodation options.

52.    Through the Spring of 2024, Plaintiff's condition worsened as she worked under constant threat of termination for noncompliance with the Hybrid policy.

### Plaintiff's Constructive Termination

53.    In July 2024, left with no other options from Defendants, Plaintiff went on Short-Term Disability leave to address her ongoing medical needs, in addition to the emotional pain and suffering she endured while employed with Defendant WWP.

54.    Unlike the previous time Plaintiff went on this leave, Defendants suspended and restricted her work account access.

55.    On December 16, 2024, Defendants notified Plaintiff that unless she returned to work with Defendant in compliance with its Hybrid policy and without any accommodations for her disabilities, Defendant considered Plaintiff to have voluntarily resigned.

56.    Plaintiff believes that Respondent unlawfully subjected her to discriminatory and retaliatory treatment and harassment on the basis of her disability in violation of the ADA, NYSHRL, and NYCHRL, and subjected her to a hostile work environment so that she, like any reasonable person in her position would be unable to return to work with Defendant.

57.    Defendants failed to engage in an interactive dialogue regarding reasonable accommodations and instead subjected Plaintiff to harassment and retaliation for seeking an accommodation of her disabilities.

### AS AND FOR A FIRST CAUSE OF ACTION

*Disability Discrimination in Violation of the Americans with Disabilities Act against Defendant WWP*

58.    Plaintiff repeats and realleges each and every allegation in the preceding paragraphs with the same force and effect as if fully set forth herein.

59.    Plaintiff was an employee within the meaning of Americans with Disabilities Act ("ADA"), 42 U.S.C.S. §12111(4), and Defendant WWP was an employer within the meaning of the ADA, 42 U.S.C.S. §12111(5).

60.    Pursuant to the ADA, 42 U.S.C.S. §12112, it is unlawful for an employer to "discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."

61.    Defendant WWP discriminated against Plaintiff and deprived Plaintiff of her rights under the ADA by subjecting her to discrimination in the terms, conditions, or privileges of employment when, *inter alia*, it refused to allow her to interview for the Director position, and constructively discharged her from employment by allowing, condoning, and participating in a work environment so permeated with discriminatory and retaliatory hostility thereby making the working conditions intolerable that any reasonable person in Plaintiff's position would have felt compelled to resign.

62.    The basis or motivating factor for these adverse acts was Plaintiff's disability.

63.    But for Plaintiff's disability, Plaintiff would not have been subjected to discrimination in the terms, conditions or privileges of her employment.

64.    Defendant WWP's unlawful acts were intentional, willful, malicious and in reckless disregard of Plaintiff's rights.

65.    By engaging in the aforesaid acts, Defendant WWP engaged in an unlawful discriminatory practice as defined by the ADA, 42 U.S.C.S. §12112.

66.     As a result of Defendant WWP's unlawful acts, Plaintiff has suffered and continues to suffer severe emotional distress, mental anguish, trauma, depression, anxiety, humiliation, shame, pain and suffering.

## AS AND FOR  A SECOND CAUSE OF ACTION

*Harassment in Violation of the Americans with Disabilities Act against Defendant WWP*

67.     Plaintiff repeats and realleges each and every allegation in the preceding paragraphs with the same force and effect as if fully set forth herein.

68.     Plaintiff was an employee within the meaning of Americans with Disabilities Act ("ADA"), 42 U.S.C.S. §12111(4), and Defendant WWP was an employer within the meaning of the ADA, 42 U.S.C.S. §12111(5).

69.     Pursuant to the ADA, 42 U.S.C.S. §12112, it is unlawful for an employer to "discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment," and courts have recognized ADA claims based on harassment or a hostile work environment, equating the standard to that under Title VII.

70.     Defendant WWP harassed Plaintiff, subjected her to a hostile work environment, and deprived Plaintiff of her rights under the ADA by subjecting her to discrimination in the terms, conditions, or privileges of employment by creating, fostering, condoning, accepting, ratifying, acquiescing in and/or otherwise failing to prevent or remedy a hostile work environment in which Plaintiff was subjected to offensive and derogatory statements and comments, targeting, bullying, embarrassment and humiliation, based upon Plaintiff's disability, and refusal to investigate and take action against such discrimination and harassment despite witnessing and/or receiving complaints of the same.

71.    The basis or motivating factor for this harassment was Plaintiff's disability.

72.    But for Plaintiff's disability, Plaintiff would not have been subjected to such harassment.

73.    Defendant WWP's unlawful acts were intentional, willful, malicious and in reckless disregard of Plaintiff's rights.

74.    By engaging in the aforesaid acts, Defendant WWP engaged in an unlawful discriminatory practice as defined by the ADA, 42 U.S.C.S. §12112.

75.    As a result of Defendant WWP's unlawful acts, Plaintiff has suffered and continues to suffer severe emotional distress, mental anguish, trauma, depression, anxiety, humiliation, shame, pain and suffering.

## AS AND FOR A THIRD CAUSE OF ACTION

*Failure to Accommodate in Violation of the Americans with Disabilities Act against Defendant WWP*

76.    Plaintiff repeats and realleges each and every allegation in the preceding paragraphs with the same force and effect as if fully set forth herein.

77.    Plaintiff was an employee within the meaning of Americans with Disabilities Act ("ADA"), 42 U.S.C.S. §12111(4), and Defendant WWP was an employer within the meaning of the ADA, 42 U.S.C.S. §12111(5).

78.    Pursuant to the ADA, it is unlawful for an employer to fail to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee." 42 U.S.C. § 12112(5)(A).

79.    Defendant WWP discriminated against Plaintiff and deprived her of her rights under the ADA by subjecting her to discrimination in her terms, conditions or privileges of employment, and refusing to provide reasonable accommodations for her known disabilities when

Plaintiff made multiple requests for accommodations and Defendant WWP continuously refused to provide her the accommodations necessary to safely perform her job duties.

80.     The basis or motivating factor for these adverse acts was Plaintiff's disability.

81.     But for Plaintiff's disability, Plaintiff would not have been subjected to discrimination in the terms, conditions or privileges of her employment.

82.     Defendant WWP's unlawful acts were intentional, willful, malicious and in reckless disregard of Plaintiff's rights.

83.     By engaging in the aforesaid acts, Defendant WWP engaged in an unlawful discriminatory practice as defined by the ADA, 42 U.S.C. § 12112(5)(A).

84.     As a result of Defendant WWP's unlawful acts, Plaintiff has suffered and continues to suffer severe emotional distress, mental anguish, trauma, depression, anxiety, humiliation, shame, pain and suffering.

### AS AND FOR A FOURTH CAUSE OF ACTION

*Retaliation in Violation of the Americans with Disabilities Act against Defendant WWP*

85.     Plaintiff repeats and realleges each and every allegation in the preceding paragraphs with the same force and effect as if fully set forth herein.

86.     Plaintiff was an employee within the meaning of Americans with Disabilities Act ("ADA"), 42 U.S.C.S. §12111(4), and Defendant WWP was an employer within the meaning of the ADA, 42 U.S.C.S. §12111(5).

87.     Pursuant to the ADA, it is unlawful for an employer to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by this Act." 42 U.S.C. § 12203(b).

88.    Plaintiff engaged in protected activity by requesting a reasonable accommodation for her disabilities.

89.    Defendant WWP retaliated against Plaintiff and deprived her of her rights under the ADA by subjecting her to discrimination in her terms, conditions or privileges of employment, and refusing to provide reasonable accommodations for her known disabilities when Plaintiff made multiple requests for accommodations and Defendant WWP continuously refused to provide her the accommodations necessary to safely perform her job duties, removed her job duties, insulted her, used derogatory language towards her, refused to consider her for the Director position, and constructively discharged her from employment by allowing, condoning, and participating in a work environment so permeated with discriminatory and retaliatory hostility thereby making the working conditions intolerable that any reasonable person in Plaintiff's position would have felt compelled to resign.

90.    The basis or motivating factor for these adverse acts was Plaintiff's disability and/or protected activity.

91.    But for Plaintiff's disability and/or protected activity, Plaintiff would not have been subjected to discrimination in the terms, conditions or privileges of her employment.

92.    Defendant WWP's unlawful acts were intentional, willful, malicious and in reckless disregard of Plaintiff's rights.

93.    By engaging in the aforesaid acts, Defendant WWP engaged in an unlawful discriminatory practice as defined by the ADA, 42 U.S.C. § 12112(5)(A).

94.    As a result of Defendant WWP's unlawful acts, Plaintiff has suffered and continues to suffer severe emotional distress, mental anguish, trauma, depression, anxiety, humiliation, shame, pain and suffering.

## AS AND FOR A FIFTH CAUSE OF ACTION

*Disability Discrimination in Violation of the New York State Human Rights Law against All Defendants*

95.     Plaintiff repeats and realleges each and every allegation in the preceding paragraphs with the same force and effect as if fully set forth herein.

96.     Plaintiff was an employee within the meaning of the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 292(6), and Defendants were employers within the meaning of NYSHRL, N.Y. Exec. Law § 292(5).

97.     Pursuant to the NYSHRL, N.Y. Exec Law § 296, it is unlawful for an employer because of an individual's disability to "discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions, or privileges of employment.

98.     Defendants discriminated against Plaintiff and deprived Plaintiff of her rights under the NYSHRL by subjecting her to discrimination in the terms, conditions, or privileges of employment when, *inter alia*, it refused to allow her to interview for the Director position, and constructively discharged her from employment by allowing, condoning, and participating in a work environment so permeated with discriminatory and retaliatory hostility thereby making the working conditions intolerable that any reasonable person in Plaintiff's position would have felt compelled to resign.

99.     The basis or motivating factor for these adverse acts was Plaintiff's disability.

100.     But for Plaintiff's disability, Plaintiff would not have been subjected to discrimination in the terms, conditions or privileges of her employment.

101.     Defendants' unlawful acts were intentional, willful, malicious and in reckless disregard of Plaintiff's rights.

102.    By engaging in the aforesaid acts, Defendants engaged in an unlawful discriminatory practice as defined by the NYSHRL, N.Y. Exec. Law §§ 292 and 296.

103.    As a result of Defendants' unlawful acts, Plaintiff has suffered and continues to suffer severe emotional distress, mental anguish, trauma, depression, anxiety, humiliation, shame, pain and suffering.

## AS AND FOR A SIXTH CAUSE OF ACTION

*Harassment in Violation of the New York State Human Rights Law against All Defendants*

104.    Plaintiff repeats and realleges each and every allegation in the preceding paragraphs with the same force and effect as if fully set forth herein.

105.    Plaintiff was an employee within the meaning of the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 292(6), and Defendants were employers within the meaning of the NYSHRL, N.Y. Exec. Law § 292(5).

106.    Pursuant to the NYSHRL, N.Y. Exec Law § 296, it is unlawful for an employer because of an individual's disability to subject them to harassment, which is an unlawful discriminatory practice when it subjects an individual to inferior terms, conditions or privileges of employment because of the individual's membership in one or more of these protected categories. N.Y. Exec Law § 296

107.    Defendants harassed Plaintiff, subjected her to a hostile work environment, and deprived Plaintiff of her rights under the NYSHRL by subjecting her to inferior terms, conditions, or privileges of employment by creating, fostering, condoning, accepting, ratifying, acquiescing in and/or otherwise failing to prevent or remedy a hostile work environment in which Plaintiff was subjected to offensive and derogatory statements and comments, targeting, bullying, embarrassment and humiliation, based upon Plaintiff's disability, and refusal to investigate and

take action against such discrimination and harassment despite witnessing and/or receiving complaints of the same.

108.    The basis or motivating factor for this harassment was Plaintiff's disability.

109.    But for Plaintiff's disability, Plaintiff would not have been subjected to such harassment.

110.    Defendants' unlawful acts were intentional, willful, malicious and in reckless disregard of Plaintiff's rights.

111.    By engaging in the aforesaid acts, Defendants engaged in an unlawful discriminatory practice as defined by the NYSHRL, N.Y. Exec. Law §§ 292 and 296.

112.    As a result of Defendants' unlawful acts, Plaintiff has suffered and continues to suffer severe emotional distress, mental anguish, trauma, depression, anxiety, humiliation, shame, pain and suffering.

## AS AND FOR A SEVENTH CAUSE OF ACTION

*Failure to Accommodate in Violation of the New York State Human Rights Law against All Defendants*

113.    Plaintiff repeats and realleges each and every allegation in the preceding paragraphs with the same force and effect as if fully set forth herein.

114.    Plaintiff was an employee within the meaning of the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 292(6), and Defendants were employers within the meaning of NYSHRL, N.Y. Exec. Law § 292(5).

115.    Pursuant to the NYSHRL, N.Y. Exec Law § 296, it is unlawful for an employer "to refuse to provide reasonable accommodations to the known disabilities … of an employee."

116.    Defendants discriminated against Plaintiff and deprived her of her rights under the NYSHRL by subjecting her to discrimination in her terms, conditions or privileges of employment,

and refusing to provide reasonable accommodations for her known disabilities when Plaintiff made multiple requests for accommodations and Defendants continuously refused to provide her the accommodations necessary to safely perform her job duties.

117.    The basis or motivating factor for these adverse acts was Plaintiff's disability.

118.    But for Plaintiff's disability, Plaintiff would not have been subjected to discrimination in the terms, conditions or privileges of her employment.

119.    Defendants' unlawful acts were intentional, willful, malicious and in reckless disregard of Plaintiff's rights.

120.    By engaging in the aforesaid acts, Defendants engaged in an unlawful discriminatory practice as defined by the NYSHRL, N.Y. Exec. Law §§ 292 and 296.

121.    As a result of Defendants' unlawful acts, Plaintiff has suffered and continues to suffer severe emotional distress, mental anguish, trauma, depression, anxiety, humiliation, shame, pain and suffering.

## AS AND FOR A EIGHTH CAUSE OF ACTION

*Disability Discrimination in Violation of the New York City Human Rights Law against All Defendants*

122.    Plaintiff repeats and realleges each and every allegation in the preceding paragraphs with the same force and effect as if fully set forth herein.

123.    Plaintiff was an employee of Defendants and Defendants were Plaintiff's employers as defined by the NYCHRL, N.Y.C. Admin. Code § 8-101 *et seq.*

124.    Pursuant to the NYCHRL, N.Y.C. Admin. Code § 8-107(1), it is unlawful for an employer because of an individual's disability to "discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions, or privileges of employment."

125.    Defendants discriminated against Plaintiff and deprived Plaintiff of her rights under the NYCHRL by subjecting her to discrimination in the terms, conditions, or privileges of employment when, *inter alia*, it refused to allow her to interview for the Director position, and constructively discharged her from employment by allowing, condoning, and participating in a work environment so permeated with discriminatory and retaliatory hostility thereby making the working conditions intolerable that any reasonable person in Plaintiff's position would have felt compelled to resign.

126.    The basis or motivating factor for these adverse acts was Plaintiff's disability.

127.    But for Plaintiff's disability, Plaintiff would not have been subjected to discrimination in the terms, conditions or privileges of her employment.

128.    Defendants' unlawful acts were intentional, willful, malicious and in reckless disregard of Plaintiff's rights.

129.    By engaging in the aforesaid acts, Defendants engaged in an unlawful discriminatory practice as defined by the NYCHRL, N.Y.C. Admin. Code § 8-107(1); (15)

130.    As a result of Defendants' unlawful acts, Plaintiff has suffered and continues to suffer severe emotional distress, mental anguish, trauma, depression, anxiety, humiliation, shame, pain and suffering.

## AS AND FOR  A NINTH CAUSE OF ACTION

*Harassment in Violation of the New York City Human Rights Law against All Defendants*

131.    Plaintiff repeats and realleges each and every allegation in the preceding paragraphs with the same force and effect as if fully set forth herein.

132.    Plaintiff was an employee of Defendants and Defendants were Plaintiff's employer as defined by the NYCHRL, N.Y.C. Admin. Code § 8-101 *et seq.*

133.    Pursuant to the NYCHRL, N.Y.C. Admin. Code § 8-107(1), it is unlawful for an employer because of an individual's disability to "discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions, or privileges of employment."

134.    Defendants discriminated against Plaintiff and deprived her of her rights under the NYCHRL by subjecting her to inferior terms, conditions, or privileges of employment by creating, fostering, condoning, accepting, ratifying, acquiescing in and/or otherwise failing to prevent or remedy a hostile work environment in which Plaintiff was subjected to offensive and derogatory statements and comments, targeting, bullying, embarrassment and humiliation, based upon Plaintiff's disability, and refusal to investigate and take action against such discrimination and harassment despite witnessing and/or receiving complaints of the same.

135.    The basis or motivating factor for this harassment was Plaintiff's disability.

136.    But for Plaintiff's disability, Plaintiff would not have been subjected to such harassment.

137.    Defendants' unlawful acts were intentional, willful, malicious and in reckless disregard of Plaintiff's rights.

138.    By engaging in the aforesaid acts, Defendants engaged in an unlawful discriminatory practice as defined by the NYCHRL, N.Y.C. Admin. Code § 8-107(1); (15).

139.    As a result of Defendants' unlawful acts, Plaintiff has suffered and continues to suffer severe emotional distress, mental anguish, trauma, depression, anxiety, humiliation, shame, pain and suffering.

## AS AND FOR A TENTH CAUSE OF ACTION

*Denial of a Reasonable Accommodation in Violation of the New York City Human Rights Law against All Defendants*

140. Plaintiff repeats and realleges each and every allegation in the preceding paragraphs with the same force and effect as if fully set forth herein.

141. Plaintiff was an employee of Defendants and Defendants were Plaintiff's employers as defined by the NYCHRL, N.Y.C. Admin. Code § 8-101 *et seq.*

142. Pursuant to the NYCHRL, N.Y.C. Admin. Code § 8-107(15), it is unlawful for an employer not to provide a reasonable accommodation to enable a person with a disability to satisfy the essential requisites of a job.

143. Defendants discriminated against Plaintiff and deprived her of her rights under NYCHRL by subjecting her to discrimination in her terms, conditions or privileges of employment, and refusing to provide reasonable accommodations for her known disabilities when Plaintiff made multiple requests for accommodations and Defendants continuously refused to provide her the accommodations necessary to safely perform her job duties.

144. The basis or motivating factor for these adverse acts was Plaintiff's disability.

145. But for Plaintiff's disability, Plaintiff would not have been subjected to discrimination in the terms, conditions or privileges of her employment.

146. Defendants' unlawful acts were intentional, willful, malicious and in reckless disregard of Plaintiff's rights.

147. By engaging in the aforesaid acts, Defendants engaged in an unlawful discriminatory practice as defined by the NYCHRL, N.Y.C. Admin. Code § 8-107(1); (15)

148. As a result of Defendants' unlawful acts, Plaintiff has suffered and continues to suffer severe emotional distress, mental anguish, trauma, depression, anxiety, humiliation, shame, pain and suffering.

## AS AND FOR A ELEVENTH CAUSE OF ACTION

*Retaliation in Violation of the New York City Human Rights Law against All Defendants*

149.    Plaintiff repeats and realleges each and every allegation in the preceding paragraphs with the same force and effect as if fully set forth herein.

150.    Plaintiff was an employee of Defendants and Defendants were Plaintiff's employer as defined by the NYCHRL, N.Y.C. Admin. Code § 8-101 *et seq.*

151.    Pursuant to the NYCHRL, N.Y.C. Admin. Code § 8-107(7), it shall be an unlawful discriminatory practice "to retaliate or discriminate in any manner against any person because such person has opposed any practice forbidden" by the NYCHRL.

152.    Plaintiff engaged in protected activity by requesting a reasonable accommodation.

153.    Defendants retaliated against Plaintiff by subjecting her to inferior terms, conditions or privileges of employment subjecting her to discrimination in her terms, conditions or privileges of employment, and refusing to provide reasonable accommodations for her known disabilities when Plaintiff made multiple requests for accommodations and Defendants continuously refused to provide her the accommodations necessary to safely perform her job duties, removed her job duties, insulted her, used derogatory language towards her, refused to consider her for the Director position, and constructively discharged her from employment by allowing, condoning, and participating in a work environment so permeated with discriminatory and retaliatory hostility thereby making the working conditions intolerable that any reasonable person in Plaintiff's position would have felt compelled to resign.

154.    The basis or motivating factor for these adverse acts was Plaintiff's disability and/or protected activity.

155.    But for Plaintiff's disability and/or protected activity, Plaintiff would not have been subjected to discrimination in the terms, conditions or privileges of her employment.

156.    Defendants' unlawful acts were intentional, willful, malicious and in reckless disregard of Plaintiff's rights.

157.    By engaging in the aforesaid acts, Defendants engaged in an unlawful discriminatory practice as defined by the NYCHRL, N.Y.C. Admin. Code § 8-107(7).

158.    As a result of Defendants' unlawful acts, Plaintiff has suffered and continues to suffer severe emotional distress, mental anguish, trauma, depression, anxiety, humiliation, shame, pain and suffering.

**WHEREFORE**, Plaintiff seeks the following relief:

A.    On the First Cause of Action on behalf of Plaintiff against Defendant WWP, for all compensatory damages, costs and interest, punitive damages, along with all reasonable attorney fees, costs and interest, in an amount to be determined by this Court but greater than the jurisdictional minimum;

B.    On the Second Cause of Action on behalf of Plaintiff against Defendant WWP, for all compensatory damages, costs and interest, punitive damages, along with all reasonable attorney fees, costs and interest, in an amount to be determined by this Court but greater than the jurisdictional minimum;

C.    On the Third Cause of Action on behalf of Plaintiff against Defendant WWP, for all compensatory damages, costs and interest, punitive damages, along with all reasonable attorney fees, costs and interest, in an amount to be determined by this Court but greater than the jurisdictional minimum;

D.    On the Fourth Cause of Action on behalf of Plaintiff against Defendant WWP, for all compensatory damages, costs and interest, punitive damages, along with all reasonable attorney

fees, costs and interest, in an amount to be determined by this Court but greater than the jurisdictional minimum;

      E.      On the Fifth Cause of Action on behalf of Plaintiff against Defendants, for all compensatory damages, costs and interest, punitive damages, along with all reasonable attorney fees, costs and interest, in an amount to be determined by this Court but greater than the jurisdictional minimum;

      F.      On the Sixth Cause of Action on behalf of Plaintiff against Defendants, for all compensatory damages, costs and interest, punitive damages, along with all reasonable attorney fees, costs and interest, in an amount to be determined by this Court but greater than the jurisdictional minimum;

      G.      On the Seventh Cause of Action on behalf of Plaintiff against Defendants, for all compensatory damages, costs and interest, punitive damages, along with all reasonable attorney fees, costs and interest, in an amount to be determined by this Court but greater than the jurisdictional minimum;

      H.      On the Eighth Cause of Action on behalf of Plaintiff against Defendants, for all compensatory damages, costs and interest, punitive damages, along with all reasonable attorney fees, costs and interest, in an amount to be determined by this Court but greater than the jurisdictional minimum;

      I.      On the Ninth Cause of Action on behalf of Plaintiff against Defendants, for all compensatory damages, costs and interest, punitive damages, along with all reasonable attorney fees, costs and interest, in an amount to be determined by this Court but greater than the jurisdictional minimum;

J.      On the Tenth Cause of Action on behalf of Plaintiff against Defendants, for all compensatory damages, costs and interest, punitive damages, along with all reasonable attorney fees, costs and interest, in an amount to be determined by this Court but greater than the jurisdictional minimum;

K.      On the Eleventh Cause of Action on behalf of Plaintiff against Defendants, for all compensatory damages, costs and interest, punitive damages, along with all reasonable attorney fees, costs and interest, in an amount to be determined by this Court but greater than the jurisdictional minimum;

L.      Interest;

M.      Costs and disbursements; and

N.      Such other and further relief as is just and proper.

Dated:      Syosset, New York
            December 4, 2025                          **BELL LAW GROUP, PLLC**

                                                      *Adam P. Grogan*

                                        By:    _____
                                                      Adam P. Grogan, Esq.
                                                      Partner
                                                      116 Jackson Avenue
                                                      Syosset, New York 11791
                                                      Tel.: (516) 280-3008
                                                      apg@belllg.com

## **VERIFICATION**

I, CAROLINE BOND, I affirm this 4 day of December, 2026, under the penalties of perjury under the laws of New York, which may include a fine or imprisonment, that the foregoing is true, and I understand that this document may be filed in an action or proceeding in a court of law.

Dated: 12/04/2025

_____

COBd

_____
*Signature*

Caroline Bond

_____
*Print Name*